IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**EDUVIJEN L. MARTINEZ,**

      **Plaintiff,**

vs.                                          No. CIV 02-1118 WDS

**JO ANNE B. BARNHART, Commissioner**
**of the Social Security Administration,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court upon Plaintiff's Motion and Memorandum in Support of Reversal filed on April 22, 2003. Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that Plaintiff was not eligible for disability insurance benefits. The Court, having considered Plaintiff's Motion **[docket # 13],** Defendant's Response **[docket # 14],** Plaintiff's Reply **[docket # 19],** the administrative record and applicable law, finds that Plaintiff's Motion should be **GRANTED IN PART,** and that this matter should be remanded to the Commissioner for further proceedings in accordance with this Memorandum Opinion and Order.

### I. Procedural Background

Plaintiff, who was born on November 3, 1939, **Tr. 69,** filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act on February 11, 2000. **Tr. 69-71.** Plaintiff alleged that she became unable to work as a result of her disabling conditions on January 15, 1999. **Tr. 69.** Plaintiff's application for benefits was denied at the initial level on May 5, 2000, **Tr. 56-59,** and at the reconsideration level on February 9, 2001, **Tr. 62-64.** Plaintiff appealed by filing

a request for hearing by an administrative law judge ("ALJ") on February 23, 2001. **Tr. 65-66.**

The hearing before the ALJ was held on April 10, 2002, at which Plaintiff appeared and was represented by a non-attorney. **Tr. 26-53.** Plaintiff alleged that she was disabled as a result of back pain, varicose veins, headaches, and depression. **Tr. 32-39.** In a decision dated May 20, 2002, the ALJ denied Plaintiff's claim for DIB. **Tr. 13-18.** Plaintiff then filed a request for review with the Appeals Council on July 3, 2002. **Tr. 8-9.** The Appeals Council denied Plaintiff's request for review on August 9, 2002, **Tr. 5-6,** and thereby rendered the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). *See* 20 C.F.R. § 404.981 (2003).

On September 4, 2002, Plaintiff, who is now represented by an attorney, filed this action in which he seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The parties have consented to the undersigned United States Magistrate Judge conducting all proceedings **[docket # 10, 12],** and on April 24, 2003 this case was reassigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) **[docket # 15].**

## II.  Standard of Review

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir. 1993). In determining whether the Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the evidence, nor should it substitute its judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994). Instead, the Court should meticulously examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen,* 844 F.2d

748, 750 (10th Cir. 1993). The "substantial evidence" standard is satisfied by more than a scintilla, but less than a preponderance, of evidence. *Id.* However, evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989).

The issue in this case is whether Plaintiff is "disabled" and therefore qualified for benefits under Title II of the Social Security Act. A sequential five-step analysis applies in determining whether an adult claimant is disabled. *See Williams,* 844 F.2d at 750-52; 20 C.F.R. § 416.920. First, the question is whether the claimant is engaged in substantial gainful activity. *Williams,* 844 F.2d at 750. If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At the second step, the question is whether the claimant has an impairment or combination of impairments that is severe. *Id.* If not, the claimant is not disabled; however, if the claimant makes the required showing of severity, the analysis proceeds to step three. *Id.* at 750-51. At step three, the question is whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed Impairment"). *Id.* at 751. If so, the impairment is considered to be presumptively disabling and the claimant is entitled to benefits. *Id.* If not, the analysis proceeds to step four, where the question is whether the impairment prevents the claimant from doing past work. *Id.* The claimant is not disabled if he or she can perform past work. *Id.* If the claimant cannot perform past work, the analysis proceeds to step five. *Id.* At step five, the burden shifts to the Commissioner to establish that the claimant has the residual functional capacity ("RFC") "to perform other work in the national economy in view of his age, education and work experience." *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)). The claimant is entitled to benefits unless the Commissioner establishes that the claimant can "perform an

alternative work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984)).

### III.  Summary of the ALJ's Decision

The ALJ found at step one of the sequential analysis that Plaintiff had not engaged in substantial gainful activity since the date she became unable to work due to her alleged impairments. **Tr. 14.** The ALJ found at step two that Plaintiff suffered from severe impairments, **Tr. 15,** but found at step three that Plaintiff's impairments were not severe enough to meet or medically equal any Listed Impairment, **Tr. 15.** At step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of sedentary work, **Tr. 16,** and could perform her past relevant work as a site manager at a senior citizen program, **Tr. 17.** Because the ALJ found that Plaintiff could perform her past relevant work at step four, he concluded that Plaintiff was not disabled. Plaintiff contests the ALJ's step four determination.

### IV.  Discussion

Step four of the sequential five-step analysis is comprised of three phases. *Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ must assess the claimant's physical and mental RFC. *Id.* Second, the ALJ must "determine the physical and mental demands of Plaintiff's past relevant work," and third, the ALJ must determine "whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id.* The ALJ must make specific findings at each of the three phases. *Id.* Plaintiff contends that the ALJ erred in his assessment of Plaintiff's RFC, and also contends that the ALJ erred when he found that Plaintiff could perform her past relevant work as a site manager at a senior citizen program.

### A. Phase One: Assessment Of Plaintiff's RFC

An RFC assessment, which provides a measurement of what a claimant can still do despite the limitations caused by his or her impairments, 20 C.F.R. § 404.1545(a), is used to determine whether a claimant can still do past work or any other work at steps four and five of the sequential analysis. 20 C.F.R. § 404.1545(a)(5). The ALJ in this case concluded that Plaintiff retains the RFC to perform the full range of sedentary work. **Tr. 16, 17.** Plaintiff sets forth the following arguments in support of her contention that this RFC determination is not supported by substantial evidence.

### 1. Did The ALJ Support His Finding That Plaintiff Could Perform Sedentary Work With Certain Incompetent Evidence?

Plaintiff's first contention appears to be that the ALJ relied upon certain incompetent evidence to support his RFC assessment. The ALJ cited Plaintiff's medical records, objective test results that included an MRI of Plaintiff's head and neck, and Plaintiff's testimony relating to her daily activities and participation in the Senior Olympics to support his finding that Plaintiff retains the RFC to perform sedentary work. Additionally, after explaining his reasons for finding that Plaintiff retains the RFC to perform a full range of sedentary work, the ALJ wrote that "[t]his determination is consistent with the opinion of the State Agency medical consultants who found that the claimant's mental and physical impairments were not severe." **Tr. 16.** Although the ALJ did not agree that Plaintiff's impairments were not severe, he agreed with the State Agency's conclusion that Plaintiff was not disabled. **Tr. 16-17.** Plaintiff appears to contend that the State Agency finding that Plaintiff's impairments were not severe is not competent evidence to support the ALJ's determination that Plaintiff retains the RFC for sedentary work because the two findings are inconsistent. Plaintiff also contends that ALJ should not have relied on evidence that she participated in the Senior

Olympics as support for his RFC determination because there is no indication of what the vocational impact of this activity might have been.

I do not find Plaintiff's arguments persuasive. First, Plaintiff does not explain how a State Agency finding that she has no severe impairments is inconsistent with a finding that she retains the RFC to perform sedentary work activities. Since a person who has no severe impairments could well be capable of performing sedentary work activities, I see nothing improper or inherently illogical about the ALJ's citation to the State Agency finding as additional support for his RFC determination. Second, there appears to be no dispute that Plaintiff participated in the Senior Olympics for at least part of the time when she alleges that she was disabled.[1] Although "evidence that a claimant engages in limited activities . . . does not establish that the claimant can engage in light or sedentary work activity," the Tenth Circuit Court of Appeals has stated that "such activities may be considered, along with other evidence, in determining whether a person is entitled to disability benefits." *Gossett v. Bowen,* 862 F.2d 802, 807 (10th Cir. 1988). As I have previously noted, in assessing Plaintiff's RFC the ALJ also considered Plaintiff's medical history and objective test results. Accordingly, I find that the ALJ was entitled to consider Plaintiff's daily activities, including her participation in the Senior Olympics, along with the other evidence, and Plaintiff's contention that the ALJ relied upon incompetent evidence to support his RFC assessment does not provide a basis for reversal.

### 2. Did The ALJ Err By Failing To Consider All Of Plaintiff's Impairments?

Plaintiff also contends that the ALJ erred in assessing her RFC in that he failed to discuss her complaints of fatigue, her need for naps, and her headaches. An ALJ must "consider the limiting

---

[1] The relevant time period for purposes of this case is January 15, 1999, the date Plaintiff alleges she became disabled, until May 20, 2002, the date of the ALJ's decision. Plaintiff participated in the Senior Olympics until May, 2000. **Tr. 43-44.**

effects of all [of Plaintiff's] impairment(s), even those that are not severe, in determining [Plaintiff's] residual functional capacity." 20 C.F.R. 404.1545(e). However, at the same time:

> [A claimant's] symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect [the claimant's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present. Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.

20 C.F.R. § 404.1529(b). I can find no medical signs or laboratory findings showing the presence of a medically determinable impairment that would cause Plaintiff's alleged fatigue or need for naps. The record indicates that Plaintiff has received medical treatment for varicose veins in the right leg, **Tr. 125, 154,** depression, **188,** chronic back pain, **Tr. 195,** and headaches, **Tr. 209.** Because Plaintiff fails to identify a medically determinable impairment that would account for her fatigue and need for naps, the regulation quoted above indicates that these symptoms would not in any event be found to affect Plaintiff's ability to do basic work activities. I therefore find that any error the ALJ may have committed in failing to discuss Plaintiff's alleged fatigue or need for naps was harmless.

With regard to Plaintiff's headaches, a claimant's subjective allegation of pain, in and of itself, is not sufficient to establish disability. *E.g., Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993). Rather, "[b]efore the ALJ need even consider any subjective evidence of pain, the claimant must prove by objective medical evidence the existence of a pain-producing impairment . . . that could reasonably be expected to produce the alleged disabling pain." *Id.* (citing *Luna v. Bowen,* 834 F.2d 161, 163 (10th Cir. 1987)). I find that objective evidence in the record establishes that Plaintiff has pain-producing impairments of headache, **Tr. 199-214,** and a small disk perfusion at C5 and C6, **Tr.**

7

209.  It appears undisputed that these impairments could reasonably be expected to produce pain.

Where a claimant has established by objective medical evidence that she has an impairment that could reasonably be expected to produce pain, an ALJ must consider all of the evidence to decide whether he believes the claimant's allegations about the functional limitations that result from the pain. *See* 20 C.F.R. § 404.1529; *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995).  In evaluating Plaintiff's pain, the ALJ was required to determine the extent to which Plaintiff's symptoms could "reasonably be accepted as consistent with objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a).  With regard to her headaches, Plaintiff testified at the hearing that a protruding disk in her neck caused her to suffer severe headache pain, blurred vision, and pain and numbness in her left arm.  **Tr. 32-34.**  Plaintiff also testified that the pain could be so severe that she could not even turn her head to the left side.  **Tr. 33.**  Contrary to Plaintiff's argument, I find that the ALJ adequately addressed her allegations of headache pain.  In this regard, the ALJ found that Plaintiff's "testimony and reports of pain and functional limitations was not supported by the evidence overall in the disabling degree alleged and therefore lacked credibility."  **Tr. 15.**  The ALJ appears to have discounted Plaintiff's testimony about her headaches because he noted that an MRI performed on November 28, 2000 showed a normal head and sinuses and only a small disk perfusion at C5 and C6.  *See* **Tr. 15.**  In other words, the ALJ appears to have found that Plaintiff's testimony about her symptoms could not reasonably be accepted as consistent with the results of objective medical evidence in the record.  For the following reasons, I find that the ALJ's determination is supported by substantial evidence.

My review of the record reveals that Plaintiff sought medical treatment for headaches during the period under review.  However, I can find no indication in the record that Plaintiff had been

diagnosed with anything other than tension headaches, **Tr. 209,** and migraine or mixed vascular headaches, **Tr. 199, 201.**  Moreover, the history Plaintiff provided when seeking treatment for headaches appears to be somewhat inconsistent.  On September 8, 2000, Plaintiff reported to one of her doctors that she had been suffering from a migraine for three days.  **Tr. 214.**  Plaintiff stated at that time that she had migraines in grade school that had stopped for a long time, but that she had been having them again for the past two months.  **Tr. 214.**  A few weeks later, on September 25, 2000, Plaintiff sought treatment again for headaches.  **Tr. 210.**  At that time, and somewhat inconsistently with the report given when she saw a doctor a few weeks earlier, Plaintiff reported having these headaches for several years.  **Tr. 210.**  In determining whether the ALJ erred in this case, I cannot re-weigh the evidence or substitute my judgment for that of the ALJ.  *See Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994).  Instead, I must affirm if the ALJ's decision is supported by more than a scintilla, but less than a preponderance, of evidence.  *See Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).  I find that the foregoing evidence, coupled with the MRI that showed that Plaintiff has a normal head and sinuses and only a small disk perfusion at C5 and C6, provides adequate support for the ALJ's finding that Plaintiff's complaints of disabling headache pain lacked credibility.  In view of the foregoing discussion, I therefore find no reversible error in the ALJ's alleged failure to discuss Plaintiff's complaints of fatigue, her need for naps, and her headaches.

### 3. Did The ALJ Err When He Concluded That Plaintiff Could Perform Sedentary Work Despite Her Leg Impairments?

Plaintiff contends that the ALJ erred when he found that she retains the RFC to perform sedentary work because this conclusion is inconsistent with evidence that she cannot sit for long periods of time.  Plaintiff also appears to contend that, in any event, the ALJ's RFC assessment is

defective because he failed to consider evidence that Plaintiff needs to elevate her legs.  For the following reasons, I find that the ALJ's RFC assessment fails to adequately address evidence relating to the functional restrictions that arise out of Plaintiff's leg impairments.

Plaintiff's medical records indicate that, on March 18, 2000, she showed "evidence of small varicose veins" in her right lower leg.  **Tr. 154.**  On May 1, 2000, Plaintiff sought treatment for pain in her right leg.  **Tr. 125.**  Dr. Kathleen Maley found that Plaintiff had "varicosities noted down her right leg and some crepitus over her right knee in particular."  **Tr. 125.**  Subsequently, on February 28, 2001, Plaintiff saw Nurse Practitioner Catherine Auckland.  **Tr. 205-206.**  Ms. Auckland's assessment included superficial chronic thrombophlebitis.  **Tr. 205-206.**  Ms. Auckland also wrote, "some scars noted on her [left] leg where the superficial clots were excised and does have a hard indurated area above one of the incisions on her [left] calf and slightly tender, that's been there for quite a while."  **Tr. 205.**  Since Plaintiff was about to embark upon a trip to California, Ms. Auckland encouraged her to wear support hose and to take aspirin daily to prevent any breaks of the thrombophlebitis, and also wrote that Plaintiff "was not to sit longer than an [hour] and if she gets any more increased swelling or any increase in the induration in her legs she is to come back immediately."  **Tr. 206.**  In addition to evidence in her medical records, Plaintiff testified at the hearing before the ALJ that one of the reasons she stopped working as a site manager at a senior citizen's center was that she could not sit for long periods.  **Tr. 31.**  Plaintiff also testified that she needs to elevate her legs at times, depending upon the severity of her pain.  **Tr. 40.**  She testified that on a bad day, she would need to elevate her legs three or four times.  **Tr. 40.**  She also testified that her leg bothered her if she walked too much or stood too much.  **Tr. 49.**

Although the ALJ took note of the evidence in Plaintiff's medical records, he appears to have

10

discounted it for several reasons.  First, the ALJ noted that at her examination on May 1, 2000, Plaintiff's doctor stated that the visit "was simply for a check-up and noted no specific complaints that needed to be addressed." **Tr. 15.**  Second, the ALJ noted that on February 28, 2001, Plaintiff's medical provider directed that Plaintiff was not to sit for more than an hour.  Nevertheless, the ALJ wrote that the medical provider "noted no other restrictions." **Tr.15.**  Third, the ALJ stated that on February 28, 2001, Plaintiff's leg pain "was diagnosed as superficial thrombophlebitis." **Tr. 16.**  Fourth, the ALJ noted that Plaintiff had undergone "vein stripping with good results." **Tr. 16.**  Finally, the ALJ concluded that although Plaintiff "continues to have varicose veins, her leg pain is less frequent and less severe." **Tr. 16.**  The ALJ apparently reached this conclusion because "[s]ince April 8, 2000, the claimant has reported leg pain to her doctor on only one occasion." **Tr. 16.**

In view of the foregoing evidence, it appears undisputed that Plaintiff has varicose veins and thrombophlebitis, that these conditions cause her at least some pain, and that a medical provider specifically directed Plaintiff not to sit for longer than one hour.  Evidence that is germane to Plaintiff's ability to sit would seem particularly important in this case, for the ALJ concluded that Plaintiff retains the RFC to perform a full range of sedentary work, and sedentary work unquestionably requires a good deal of sitting.  *See* 20 C.F.R. § 404.1567(a).  Yet, even though the ALJ noted the restriction that Plaintiff should not sit longer than one hour in his decision, **Tr. 15,** he did not explain how it might affect Plaintiff's RFC before concluding that Plaintiff could perform a full range of sedentary work.  The ALJ also failed to even mention Plaintiff's testimony that she needs to elevate her legs at times.  I find that the ALJ's failure to discuss the recommendation that Plaintiff should not sit for more than one hour, as well as Plaintiff's testimony about her need to elevate her legs, violates the Commissioner's own regulations.  In this regard, in evaluating the extent to which

11

pain limits a claimant's capacity to work, an ALJ is required to consider all available evidence, including the claimant's medical history, medical signs and laboratory findings, and statements from the claimant, his or her examining physician, or other persons about how the pain affects the claimant. 20 C.F.R. § 404.1529(c). Even in cases where no physician has explicitly confirmed that a claimant suffers severe pain, "the claimant is entitled to have his nonmedical objective and subjective testimony of pain evaluated by the ALJ and weighed alongside the medical evidence. . . .  An ALJ may not ignore the evidence and make no findings." *Huston v. Bowen,* 838 F.2d 1125, 1131 (10th Cir. 1988). I therefore find that the ALJ was required to show that he considered the foregoing evidence, and his failure to do so constitutes legal error.

### 4. Did The ALJ Fail To Adequately Develop The Record?

Plaintiff puts forth a rather generalized contention that the ALJ failed in his duty to develop the record by adequately questioning Plaintiff regarding her RFC. This contention may encompass Plaintiff's assertions that the ALJ failed to question Plaintiff about the how walking and standing for long periods of time affect her, and also failed to inquire about the "frequent depressive withdrawal noted by the SSA consultant." For the following reasons, I find that the ALJ did not fail to develop the record as it pertains to Plaintiff's physical and mental RFC. However, I will address in a separate section below Plaintiff's contention that the ALJ failed to adequately develop the record as to Plaintiff's past relevant work.

In every social security case, an ALJ has a duty to "ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Dep't of Health & Human Servs.,* 13 F.3d 359, 360-61 (10th Cir. 1993). Plaintiff's contention that the ALJ failed to adequately question Plaintiff regarding her RFC focuses upon the fact that the

majority of the questions asked by the ALJ related to Plaintiff's participation in the Senior Olympics. However, Plaintiff neglects to mention the fact that she was represented at the hearing by a non-attorney, and that her representative questioned her extensively about the functional limitations she suffers as a result of her alleged impairments.[2] With regard to Plaintiff's physical RFC, Plaintiff testified at length about the limitations she suffers because of her alleged impairments. For example, Plaintiff testified that she could not sit for long periods of time or lift fifty pounds, **Tr.31;** that she cannot turn her head to the left, **Tr. 33;** that she gets headaches that last from three or four days to a week and a half, **Tr. 33-34;** that her arm feels weak and tired, **Tr. 34;** that because of problems with her back and leg, she cannot handle a vacuum cleaner, **Tr. 36;** that pain prevents her from bending, stooping, squatting and crouching, **Tr. 36;** that she cannot lift anything heavy or do much walking, **Tr. 37;** and that she can only do light housework, **Tr. 38.**

With regard to Plaintiff's mental RFC, Plaintiff also testified that she started receiving treatment for depression in 1998, and that she takes Paxil and Amitriptyline. **Tr. 38-39.** She testified that her depression affects her ability to be around people and to socialize, and that she just stays home alone with the doors locked. **Tr. 39.** Plaintiff also testified that she has crying spells, and she does not know what she would do without her medication. **Tr. 39.** Additionally, Plaintiff stated that her memory, thinking and concentration are impaired, **Tr. 40,** that she no longer participates in hobbies, **Tr. 40,** and that she is mistrustful of others, **Tr. 41.**

Because Plaintiff had the opportunity to testify, and testified extensively, about the nature of

---

[2] I recognize that an ALJ's duty to develop the record exists even where the claimant is represented by counsel. *E.g., Henrie v. United States Dep't of Health & Human Servs.,* 13 F.3d 359, 360-61 (10th Cir. 1993). However, it would be pointless to require an ALJ to elicit testimony from the claimant on subjects that have already been addressed by the claimant's representative.

her alleged impairments and the manner in which those impairments affect her functioning, I reject Plaintiff's general contention that the ALJ failed to develop the record regarding Plaintiff's RFC. *See generally Glass v. Shalala,* 43 F.3d 1392, 1396 (10th Cir. 1994) (ALJ's duty of inquiry satisfied where claimant testified about her impairments and their effect on her functioning, and documentary record contained sufficient facts for ALJ to make informed decision).

### B. Phase Two: Determination Of The Physical And Mental Demands of Plaintiff's Past Relevant Work

After assessing Plaintiff's RFC, the ALJ was required at the second phase of the step four inquiry to determine the physical and mental demands of Plaintiff's past relevant work ("PRW"). *See Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996). Plaintiff contends that the ALJ erred in determining the physical and mental demands of Plaintiff's PRW in the following ways.

#### 1. Did The ALJ Err By Relying Upon Plaintiff's Testimony?

Plaintiff asserts that the ALJ found her past work as a site manager at a senior citizen's program was sedentary "as she performed it." Although it is not clear, Plaintiff appears to contend that the ALJ should not have relied upon Plaintiff's description of the job when he determined the physical and mental demands of her PRW, but should instead have obtained testimony from a vocational expert or referred to the Dictionary of Occupational Titles. However, for step four purposes, "[t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." SSR 82-62. I therefore find that the ALJ properly relied upon Plaintiff's testimony in determining the demands of her PRW.

**2.  Did The ALJ Err By Failing To Adequately Develop The Record?**

Plaintiff's second contention is that the ALJ erred when he failed to adequately develop the record as to the demands of her PRW.  In this regard, Plaintiff asserts that the ALJ failed to ask Plaintiff questions to clarify a discrepancy between a questionnaire and Plaintiff's direct testimony regarding the amount of weight Plaintiff was required to lift in her PRW as a site manager. The evidence Plaintiff refers to is as follows.  On one hand, the questionnaire at issue indicates that in her job as site manager, the heaviest weight Plaintiff lifted was less than ten pounds.  **Tr. 79.**  On the other hand, Plaintiff testified at the hearing before the ALJ that one of the reasons she left that job was that she was "supposed to be able to lift at least fifty and more pounds," but no longer could because of her physical condition.  **Tr. 31.**

The ALJ relied upon the questionnaire in finding that Plaintiff's PRW as a site manager was "sedentary as the claimant performed it."  **Tr. 17** (citing **Tr. 77-86**).  Indeed, if the position of site manager required Plaintiff to lift at least fifty pounds as Plaintiff testified, it would not fall within the definition of sedentary work.  *See* 20 C.F.R. § 404.1567(a) (sedentary work involves lifting no more than ten pounds at a time).  However, the ALJ did not explain why he rejected Plaintiff's direct testimony that she was required to lift at least fifty pounds.  I find his failure to explain how he resolved this discrepancy was error, for an ALJ is required to make specific findings regarding the physical and mental demands of the claimant's work. *Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996).  Moreover, "[t]he decision whether the claimant retains the residual functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision.  Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as

15

clearly and explicitly as circumstances permit." SSR 82-62. The ALJ should, therefore, have resolved this conflict in the evidence and made a specific finding regarding the amount of weight Plaintiff was required to lift in her PRW as a site manager.

Plaintiff also points to her testimony that one of the reasons she left her job as a site manager was that she could no longer meet the requirement that she drive a van. **Tr. 31.** The ALJ, however, never mentioned any requirement that Plaintiff drive a van. As I have noted, an ALJ is required to make specific findings regarding the physical and mental demands of the claimant's work. *Winfrey,* 92 F.3d at 1023. Since I have already found that this case must be remanded for further consideration of the demands of Plaintiff's past relevant work, the Commissioner should also address any driving requirement associated with Plaintiff's past relevant work in her findings.

### C. Phase Three:  Whether Plaintiff Could Meet The Demands Of Her Past Relevant Work Despite The Limitations Attendant To An RFC For Sedentary Work

At the third phase of the step four inquiry, the ALJ was required to determine whether Plaintiff had the ability to meet the demands of her past relevant work ("PRW") despite the limitations attendant to her RFC. *See Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ must make specific findings for each of the three phases of the step four inquiry. *Id.*

Plaintiff contends that the ALJ erred when he found that her past relevant work as a site manager at a senior citizen's center fit within the definition of sedentary work. In this regard, a questionnaire in the record indicates that the position of site manager required Plaintiff to alternate walking, standing, and sitting all day long. **Tr. 79.** Plaintiff apparently contends that a job with this requirement falls into the light, but not sedentary, category. *See* 20 C.F.R. § 404.1567(a) (a job is sedentary if walking and standing are required occasionally); 20 C.F.R. § 404.1567(b) (light work

requires a good deal of walking or standing). However, I have previously found that the ALJ erred when assessing Plaintiff's RFC, and also erred in determining the demands of Plaintiff's past relevant work. In view of the fact that Plaintiff's RFC and the demands of her past relevant work must be re-assessed, the Commissioner will also necessarily be required to reconsider the issue of whether Plaintiff could meet the demands of her past relevant work despite the limitations attendant to her RFC. While it is therefore unnecessary for the Court to address Plaintiff's phase three argument, on remand I find the Commissioner should make specific findings about the extent to which Plaintiff was required to alternate standing, walking and sitting in her past relevant work.

## V. Issue Raised For The First Time In Plaintiff's Reply

Plaintiff also contends, for the first time in her Reply brief, that the ALJ gave inadequate consideration to her mental impairment. However, I will not consider arguments raised for the first time in a Reply brief. *See Stump v. Gates,* 211 F.3d 527, 533 (10th Cir. 2000) (court will not ordinarily review issues raised for the first time in a reply brief); *Sadeghi v. Immigration & Naturalization Serv.,* 40 F.3d 1139, 1143 (10th Cir. 1994) (court generally does not consider issues raised for the first time in a reply brief, except where those issues relate to jurisdictional requirements).[3]

## VI. Conclusion and Summary

In sum, I find that the ALJ erred in assessing Plaintiff's RFC in that he failed to show that he

---

[3] Plaintiff also filed, after briefing had been completed, citation of certain authorities that allegedly supported reversal. However, the authorities cited by Plaintiff were inapposite. *Frazee v. Barnhart,* 259 F.Supp.2d 1182 (D.Kan. 2003) involved an ALJ's failure to investigate a discrepancy between vocational expert testimony and job descriptions in the Dictionary of Occupational Titles. That situation is not presented here. Similarly, *Eddy v. Massanari,* 180 F.Supp.2d 1255 (D. Kan. 2002) addressed a higher burden of proof at step five of the sequential evaluation process. Since the ALJ decided this case at step four, *Eddy* does not apply.

considered Plaintiff's testimony that she needs to elevate her legs at times, and an order by a medical provider directing Plaintiff not to sit for more than one hour at a time.  I further find that the ALJ erred when he failed to make specific findings regarding the physical and mental demands of Plaintiff's past relevant work.  In this regard, the ALJ erred when he failed to resolve a conflict in the evidence as to how much weight Plaintiff was required to lift, and when he failed to address a driving requirement for Plaintiff's past relevant work as a site manager at a senior citizen's center. Accordingly, this matter shall be remanded to the Commissioner of Social Security to conduct additional proceedings, which shall include:

1)   At the first phase of step four of the sequential evaluation process, the Commissioner should re-assess Plaintiff's residual functional capacity.  This re-assessment should include consideration of evidence that Plaintiff needs to elevate her legs, and evidence that Plaintiff should not sit for more than one hour at a time.

2)   At the second phase of step four of the sequential evaluation process, the Commissioner should re-determine the physical and mental demands of Plaintiff's past relevant work and make specific findings including how much weight Plaintiff was required to lift, how much Plaintiff was required to drive for the job, and the extent to which Plaintiff was required to alternate walking, standing and sitting each day.

3)   At the third phase of step four of the sequential evaluation process, the Commissioner should re-evaluate whether Plaintiff had the ability to meet the demands of her past relevant work despite the limitations attendant to her RFC.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion and Memorandum in Support of Reversal filed on April 22, 2003 **[docket # 13]** is **GRANTED IN PART,** and this matter shall be

remanded to the Commissioner of Social Security for further proceedings in accordance with this Memorandum Opinion and Order.

_____
**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**